Filed 3/5/14  In re Evangeline A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re EVANGELINE A. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | F067807 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 516358, 516379) |
| v. | |
| EVAN A., | |
| Defendant and Appellant. | |
| In re MADDISON H. et al., Persons Coming Under the Juvenile Court Law. | **OPINION** |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | |
| Plaintiff and Respondent, | F067884 |
| v. | (Super. Ct. Nos. 516357, 516358, 516379) |
| R.H., | |
| Defendant and Appellant. | |

### THE COURT*

APPEALS from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Sharon Rollo, under appointment by the Court of Appeal, for Evan A., Defendant and Appellant.

Robert McLaughlin, under appointment by the Court of Appeal, for R.H., Defendant and Appellant.

---

\*       Before Poochigian, Acting P.J., Franson, J. and Peña, J.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellants Evan A. (father) and R.H. (mother) appeal from the juvenile court's orders summarily denying without a hearing their Welfare and Institutions Code section 388 (section 388)[1] petitions for modification of the court's orders terminating their family reunification services. Father and mother requested that the court continue reunification services. Alternatively, mother requested the court return the children, Maddison, Evangeline and Patrick, to her care.

Father and mother contend the juvenile court erred in denying their section 388 petitions because they presented prima facie evidence of changed circumstances and that the proposed change of order would promote the best interests of the children. They further contend that the juvenile court's subsequent orders terminating their parental rights must also be vacated if they prevail on this appeal. We consolidated their appeals on our own motion.

We conclude the juvenile court did not abuse its discretion when it summarily denied father and mother's section 388 petitions because they showed, at best, changing rather than changed circumstances, and failed to show that the proposed change of order would promote the children's best interests. Finding no error, we affirm the orders as to each parent.

**PROCEDURAL AND FACTUAL SUMMARY**

Father and mother, 44 and 41 years old, respectively, are the parents of three-year-old Evangeline and 18-month-old Patrick. Mother also has a five-year-old daughter, Maddison. Maddison, Evangeline and Patrick are the subjects of this appeal.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Father and mother have been using illicit drugs for over 20 years, principally methamphetamine. Father also has an extensive criminal history involving use, possession and sale of drugs.

Dependency proceedings were initiated in July 2012, when the Stanislaus County Community Services Agency (agency) took then three-year-old Maddison and 18-month-old Evangeline into protective custody after family maintenance services proved ineffective. At the time, mother was pregnant with Patrick and father was in violation of his parole. The agency placed Maddison and Evangeline with their maternal grandmother.

The agency referred mother for residential drug treatment at Nirvana Women of Hope (Nirvana) but she refused. When she gave birth to Patrick a month later at 34 weeks gestation, the agency took him into protective custody and placed him in foster care.

In September 2012, the juvenile court ordered father and mother to participate in reunification services, which included drug treatment and random drug testing. At the time, they were both in residential drug treatment, having entered the month before. Mother was a resident of Nirvana and father a resident of Seventh Step Foundation, Inc. (Seventh Step) as a requirement of his parole.

In early November 2012, father tested positive for alcohol and was discharged from Seventh Step. A warrant was issued for his arrest and his whereabouts were unknown. He was seen, however, at mother's AA/NA meeting in Modesto on November 12, 2012, and appeared to be under the influence. Father also appeared at the hospital, in December 2012, where mother was being treated for a bacterial infection. According to mother's primary counselor who was present in the room, father appeared to be under the influence. The counselor told mother she was not allowed to be around father and asked him to leave. He did so despite mother's begging him to stay. As a result of this incident, as well as prior infractions, mother was discharged from Nirvana.

In early January 2013, mother reentered Nirvana. She disclosed to staff that she was with father prior to her reentry and used drugs "'off and on.'" She was discharged again at the end of the month for lying about calling her sponsor for the third time. By that time, she and father had conceived another child. The staff at Nirvana advised the agency mother had little chance of sustaining long-term recovery because of her dishonesty, lack of motivation to change and continuing relationship with father. Mother's counselor recommended mother complete long-term, intensive, residential treatment. Two days before mother was discharged from Nirvana, father entered C.U.R.A., Inc., an in-custody residential treatment program with a 90-day minimum stay and an average stay of 9 to 12 months.

In late February 2013, mother completed a substance abuse assessment and tested positive for methamphetamine. She denied using the drug, but a hair follicle test confirmed the result.

In April 2013, following a contested six-month review hearing, the juvenile court terminated father and mother's reunification services and set a section 366.26 hearing. The court did so after receiving evidence that father exhibited "remarkable improvement" at C.U.R.A. and intended to complete the nearly year-long program and that mother was attending parenting and counseling sessions and was scheduled to reenter Nirvana in April.

The juvenile court also heard father and mother's testimony that they remained an intact couple and visited the children. Mother visited the children once a week and spoke to them on the phone every day. She said when Maddison and Evangeline saw her, they ran up to her and hugged and kissed her. Patrick held her, played with her hair and smiled. She played games with them, put puzzles together, watched movies and played ball. When it was time to leave, Evangeline was fussy but Maddison transitioned easily because she knew she would see mother the next week. Father testified he had not been able to visit the children since he entered C.U.R.A. and last saw them in December.

4

However, he spoke to them once a week on the telephone. He mainly spoke to Maddison, who told him she loved and missed him.

Father sought relief from the juvenile court's orders terminating his reunification services and setting a section 366.26 hearing as to Evangeline and Patrick by filing a writ petition. (Cal. Rules of Court, rule 8.452.) We denied the petition (F067039).

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate father and mother's parental rights and free Maddison and Evangeline to be adopted by their maternal grandmother and Patrick by his caregivers who supported ongoing sibling contact. The agency reported that father and mother visited the children once a month at the agency and called Maddison and Evangeline on a daily basis.

On July 24, 2013, father filed a "Request to Change Court Order" (JV-180) under section 388, asking the juvenile court to reinstate reunification services. He stated that he continued to participate in and make substantive progress in his drug treatment program. He also stated that reinstating services would be better for the children because they were closely bonded to him and they enjoyed a parent-child relationship. Attached to his JV-180 was a letter from the men's program coordinator at Options Recovery Services, an outpatient substance abuse program. The coordinator stated that father started the program in late May 2013, finished early treatment and was in Phase I. He said father regularly attended five times a week for three hours a day and had not tested positive for drugs and alcohol. Also attached to the JV-180 was a letter from father's parole officer stating he had been compliant with all the conditions of his parole since he was placed in C.U.R.A.

On July 26, 2013, the juvenile court denied father's section 388 petition by checking the box on the preprinted form stating, "The request does not state new evidence or a change of circumstances." Handwritten on lines below that was the statement, "Viewed in the most favorable light possible the request shows changing circumstances at best."

5

On July 30, 2013, mother filed a JV-180 as to all three children asking the juvenile court to return the children to her custody or reinstate reunification services. Mother stated she continued to participate in substance abuse services and parenting classes, was in Phase I of her treatment and had 155 days of sobriety. She further stated the children were closely bonded to her and had difficulty separating from her at the end of visits. She said she and the children had a parent-child relationship, she spoke with Maddison and Evangeline daily and she visited them regularly at the agency's facility. She also stated that granting her request would prevent the children from being separated and preserve their sibling bond. Attached to mother's JV-180 was a letter from the perinatal drug and alcohol treatment program stating that mother began the program in early May 2013 and was in Phase I of a three-phase program. It stated mother's pregnancy was high risk, which adversely affected her attendance at substance abuse and parenting sessions. She was inconsistent in submitting proof she attended meetings and journaling and had not obtained a sponsor. However, she was randomly drug tested and tested negative each time.

On July 30, 2013, the juvenile court denied mother's JV-180 for the reasons it denied father's, with the added comment that mother's changes came "very late in the proceedings."

In August 2013, the juvenile court conducted a contested section 366.26 hearing. Mother testified about her visits with the children. She said that Maddison and Evangeline ran to her and hugged her when they saw her and they call her "Mommy." When visits ended, Maddison and Evangeline clung to mother, not wanting to let her go. Evangeline also screamed and cried. Patrick was usually asleep and was sometimes fussy because he did not like to be put back in the car seat. Maddison and Evangeline told her they love her.

Mother further testified she believed it would be detrimental to Maddison and Evangeline to sever her parental rights. She believed Maddison and Patrick had a sibling

6

relationship because Patrick looked for Maddison and she held him on her lap and they played. She believed Evangeline had a "little bit" of a relationship with Patrick. Evangeline kissed Patrick and called him "brother." Mother conceded, however, that Patrick had never lived in the same home with Maddison and Evangeline and that she had never parented him after his birth. She also agreed that Maddison and Evangeline were doing well in their grandmother's care.

Father testified that since their last court appearance, he visited the children once a month. He said Evangeline calls him "Daddy" and runs to see him and hugs him at the beginning of visits. At the end of visits, she clung to mother. He said Patrick was happy to see him. He believed it would be detrimental to Evangeline if his parental rights were terminated because she knew he was her father. He acknowledged he had not been around Patrick much but wanted to be his father. He also believed it would be detrimental to the children if they were not able to see each other.

During argument, father and mother's attorneys argued the beneficial relationship and sibling relationship exceptions to adoption (§ 366.26, subd. (c)(1)(B)) applied and that guardianship was a better permanent plan for the children. The juvenile court disagreed that either exception applied and terminated father and mother's parental rights. This appeal ensued.

**DISCUSSION**

Father and mother contend they presented prima facie evidence to support an evidentiary hearing on their section 388 petitions and thus the juvenile court's summary denial of their petitions was an abuse of discretion. We disagree.

Section 388, subdivision (a)(1) states in relevant part: "Any parent … may, upon grounds of change of circumstance or new evidence, petition the court … to change, modify, or set aside any order of court previously made …." "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 (*Marilyn H.*).)

7

In order to make a prima facie showing, the parent must demonstrate a genuine change of circumstances and that the undoing of the prior order would serve the best interests of the child. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529.) To that end, the parent must demonstrate *changed*, *not changing* circumstances. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).)

Section 388 petitions "are to be liberally construed in favor of granting a hearing to consider the parent's request." (*Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) "[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) We review the juvenile court's summary denial of a section 388 petition for abuse of discretion. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).)

Father and mother contend the juvenile court should have found a prima facie showing of changed circumstances by virtue of their progress in treating their drug abuse. Mother points out that she was not in drug treatment when the juvenile court terminated her reunification services. However, when she filed her section 388 petition, she had been engaged in treatment for three months and had 155 days of sobriety. Father cited his continued sobriety and participation in outpatient drug treatment.

We concur with the juvenile court that father and mother's circumstances were "changing" rather than changed. Father, to his credit, continued in drug treatment and maintained his sobriety. However, viewed in light of his longstanding drug abuse, six or seven months of recovery do not constitute a material and genuine change in circumstances. The same is true of mother. She had only been in drug treatment for

8

approximately three months when she filed her petition and was still in the first phase. At best, hers was a nascent effort to change her circumstances, given her many years of drug abuse.

Even if, however, we credited father and mother's contentions with respect to changed circumstances, we would nevertheless find no abuse of discretion in the juvenile court's summary denial because they failed to show how continuing reunification efforts would serve the children's best interests. On the eve of the section 366.26 hearing, the children's interest in stability was the juvenile court's foremost concern, outweighing any interest mother and father might have in reunification. (*Anthony W.*, *supra*, 87 Cal.App.4th at pp. 251-252.) Maddison and Evangeline had not been in father and mother's care for a year and Patrick was never in their care, having been removed at birth. Though father and mother shared a loving relationship with Maddison and Evangeline, the girls were doing well with their grandmother. Father and mother failed to show how it would serve the children's best interests to remove them from their comfortable and secure placements to live with parents struggling to live drug free.

Thus, we conclude the juvenile court properly exercised its discretion in summarily denying father and mother's section 388 petitions. Having so concluded, we need not address the juvenile court's orders terminating father and mother's parental rights.

## DISPOSITION

The juvenile court's orders denying the Welfare and Institution Code section 388 petitions and the Welfare and Institution Code section 366.26 orders terminating parental rights are affirmed as to each parent.